Good morning, ladies and gentlemen. We have one case on the calendar this morning. MEDICINES CO v. DAVID KAPPOS and APP Pharmaceuticals, 2010-1534 is MEDCO's request for a patent term extension was untimely under the unamended Section 156-D-1. That's the version of the statute that applies here. Section 37 of the America Invents Act does not take effect until September of 2012. And in any event, to apply it to MEDCO's 404 patent would be unconstitutional. I'd like to start with the effective date issue. Section 35 of the America Invents Act sets the default for the act in two ways, two distinct ways. First, it provides, it sets the default effective date, except as otherwise provided in this act, the provisions of the act shall take effect upon the expiration of the one-year period beginning on the date of the amendment of this act. And second, it provides that the act shall apply prospectively, except as otherwise provided in the act, the act shall apply to any patent issued on or after that effective date. Section 37 changes only the second part. It's a typical retroactivity provision. And to be sure, once the act takes effect, it provides that it will apply retroactively. But until then, Section 35 provides the effective default date. Now, nine other times in the statute, Congress did exactly what MEDCO wants you to read into the statute. For example, in 6H2B, which is 125 stat 312, Congress provided the amendment made by this paragraph shall take effect on the date of the enactment of this act and shall apply to any appeal of a re-exam before the Board of Patent Appeals that is pending on or brought on or after the date of the enactment of this act. Similarly, section 63B, the amendments made by this paragraph shall take effect on the date of the enactment of this act and shall apply da, da, da. 9B, the amendments made by this section shall take effect on the date of the enactment of this act and shall apply to any civil action commenced on or after that date. Similarly, 10I1, 11J, 13B, 14E, 15C, 13B, 32B. All nine of those provide expressly what Medco wants you to read into section 37. It's just simply not there. This court must enforce the statute as it is written. Counselor, as a threshold matter, could you address your standing to bring this appeal? Yes, Your Honor. In order to have standing to intervene to bring an appeal, all that APP must show is that it is agreed by the district court's judgment below. APP clearly has a part of... You're talking about Article III standing now as opposed to what we sometimes loosely refer to as prudential standing or whether you have a right to be here under the APA. Yes, Judge Bryson. I think I'd explain... So you're only talking about Article III now in response to Judge Raymond's standing question? Yes, I was. Okay. Go ahead. It is our position, and I'd be happy to discuss that with you as well, that we only have to have Article III stand. I would like you to get to that after you finish with Judge Raymond's question. Thank you, Your Honor. So as to Article III injury, APP clearly has that here. APP has a pending ANDA that is serving as a block to its ability to market its generic drug. It stands ready and willing to market a generic drug, and it was planning to do so upon the patent in March of 2010, which is when it did expire. As to prudential standing, Your Honor, we don't think that applies here in the context of an intervener seeking to appeal. Well, let me ask you this. Suppose that the PTO had granted the patent term extension without no fuss, no muss granted. Presumably, you would not have a right under the APA, or perhaps you don't agree with that, but tell me whether you agree or not, whether you could then seek review of that decision by the PTO in a district court under the APA. We could not, Your Honor. You could not. So the question then is what, since the reason you could not, presumably, is you would not have a protectable legal interest in the grant of the patent term extension, right, under the APA. Otherwise, you could. Well, we do have a protectable legal interest under the grant. We're just not allowed under the APA to appeal from that. And the reason is what? Why can't you appeal under the APA? The APA doesn't allow us to appeal there, but the same is true in the Western Watersheds case. I understand that you rely on that series of Ninth Circuit cases, but it seems to me the question here is whether, unlike that whole line of cases, the question here is whether the statute is set up so that a determination by the PTO as to patent term extension is something that an opponent, a third party, does not have a legal interest in at that point. And I think you just agreed that that's true if there's a grant of a patent term extension, right? I didn't agree that we don't have a legal interest, because I think we always do have a legal interest. If you have a legal interest in the APA sense, then why don't you have an APA cause of action from the grant of a patent term extension? I think under this court's authority, we would not. You would not. But the question is analytically, how would you describe the reason you do not? The reason, it would seem to me, is you don't have the kind of legal interest that the APA requires in order to have a cause of action, right, under 702 of the APA. Well, but here the question, and the Supreme Court has made clear, that in order to intervene to appeal, all that is necessary is that we be agreed by the district court's judgment. So it didn't play out as you say, of course. All we're doing here is stepping in to defend the administrative judgment of the PTO. The PTO didn't rule against, did rule against MEDCO. It denied the request as untimely, under its long-standing precedent. And MEDCO appealed. MEDCO brought it into court, and they- Process. It just seems to me it's a peculiar situation in which you now find yourself in exactly the same position as you would have if the PTO had simply granted the patent term extension in the first instance. You wouldn't have been able to take any legal action under the initial grant situation. But you say you are able to take legal action now, and even though your situation is exactly the same. But it- No, it isn't. Except for the procedural fact that along the way, the PTO first took one view, and then after having been told by the district court that that view was wrong, the PTO presumably came back and now acquiesces. At least it hasn't appealed. But that, one, it hasn't necessarily acquiesced, but that's not the- It's acquiesced to the extent that it hasn't appealed. It didn't appeal. But the crucial distinction, Judge Bryson, is what you say, which is that it isn't what happened. The PTO, based on its long-standing precedent, denied, correctly denied, MEDCO's patent term extension. MEDCO appealed that. The PTO fought that vigorously in the district court. And only once it decided not to appeal that, for whatever reason, not necessarily because it agrees, but I'm not sure that would matter, APP then has the right, because it is injured by the district court's incorrect decision. It has an Article III injury in that. How is it injured any more than it would have been injured by the PTO's action in granting the patent term extension? Because if, in either case, you have preserved your defense in a potential infringement action, you're not going to be collaterally stopped, presumably, from arguing, or at least depending on what effect this action has, you're proceeding here. If you had simply said, OK, that's between the PTO and medicines, we can now proceed to defend on the ground of the extension's invalidity. And you'd preserve that right, right? Certainly. In both instances. Certainly, we won't be collaterally stopped if you don't allow us to intervene here or to appeal. Right. But this is no, we are no— in which case, collateral stop is irrelevant because you've lost the case. Well, we would hope that if you decide the merits, we will prevail. No, if we decide the merits against you. If we are no different from the parties in Western watersheds, it's not just the Ninth Circuit line of cases. They cite the D.C. Circuit. It's not just the Ninth Circuit that holds this. And the Supreme Court makes clear that a party that is injured by the judgment has Article III injury. Then I think if you turn to prudential standing, though, the question is, are we within the zone of— if you apply the prudential standing test, Your Honor, the test is, are we arguably within the zone of the Hatch-Waxman Act? Clearly, we are. Here, APP, the Hatch-Waxman Act is a balance between branded drugs and generic drugs. And one interest in the Hatch-Waxman Act, in fact, the interest that's vindicated in part by the 60-day strict deadline, is the ability for generics to enter the market immediately upon the expiration of the branded drugs patent. And that's what APP seeks to do. And just like in the Flying J case in the Seventh Circuit, as Judge Posner said, it makes no sense to make us— there may be another way that we can challenge this. We don't dispute that. But it makes no sense to make us do it that way. Why don't you deal with the constitutional argument? Give Mr. Keisler something to respond to. Thank you, Your Honor. In our view, the statute cannot constitutionally be applied to the 404 patent because the 404 patent expired in March of 2010. Weren't there extensions? There were interim extensions, Your Honor. But those extensions were simply to protect the ability of the judicial system to decide whether or not any of those extensions were valid. An extension is an extension. It's an interim extension, Your Honor. In fact, I think if we were to take the route that MEDCO wants us to take and to challenge this in an undervalidity challenge, the extension would be invalid. And so would all of the interim extensions that were granted because the original request was untimely. To hold otherwise would to sanction a patentee doing exactly what they've done here, which is waiting until the last minute and then running into court and getting extensions. They could extend their patent term here. They've extended it quite long when their first initial request was untimely. And so if it is invalid under Section 156, under the unamended Section 156, then it's been expired by operation of its own term since March of 2010. And not until 18 months later did Congress pass this statute. So even if the statute were to apply, and we don't think it's immediately effective, but even if it were to apply at some point, it could not be constitutionally applied. The Supreme Court has never, against a constitutional challenge, allowed Congress to revive a patent or a copyright that has run its entire original term and expired. And if the limited times provision is to have any meaning, it must foreclose the ability for Congress to go back and perpetually revive patents that have already spent their original term. Well, we don't have a situation here of perpetual revival. It's the principle, Your Honor. And in Eldred, Solicitor General Olson was asked that very question. In Eldred, of course, this Eldred was a very different question. Eldred presented the question of whether you could extend a copyright that was still in its original term. And he was asked the question, what if the copyright had expired the day before the Act? And Solicitor General said, well, there must have to be a bright line somewhere. And although the Justice Department is here today defending the statute, the Supreme Court has never upheld such an extension. And Golan presents a very similar question to this one. And we would ask that if you are going to say that Section 35 doesn't apply and Section 37 takes effect immediately, that you would hold this case for the resolution. Let's go back to Section 37 again on the merits. Assuming you have standing right to intervene, the amendment made by this subsection shall apply as to any decision regarding the application which is subject to judicial review on the effective enactment of this Act. That would seem to apply here. It would if it already took effect. This is the judicial review. We don't dispute that when the provision takes effect, it will apply retroactively. It just hasn't taken effect yet. If our court should take a year to decide this case, would that issue go away? It would, Your Honor. But then we would still have our constitutional claim. I understand. But, I mean, in other words, and indeed, I guess this is a— Assuming the statute were still valid in a year, still in effect. Right, still in effect. And the same would apply as long as, I take it, our decision was still not final in the sense that it was still under our subject to review, either within the court in a petition for rehearing or before the Supreme Court? You're right. I think only in the event that it had gone through complete and final review, then under plout, it would not apply, even though it fell within the bucket of things to which it was supposed to apply. But in that event, we would ask the court, if you do agree with us on the effective date issue, to act expeditiously and apply the statute as it's written. We don't know why Congress puts things in statutes, but we do know that they know how to make this provision effective immediately. They had in previous bills that MEDCO sought to have— What would be the rationale? I mean, I appreciate that we don't know why Congress does some things they do, but typically we look for some kind of rationale in order to satisfy ourselves that the structure that Congress has erected makes some kind of sense. What would be the reason that one would structure the statute the way you argue this statute must be read? Well, one reason would be, you know, the very concerns implicated by applying it to this case. You know, we don't know what compromises were struck. It could be that there were some people that intended us to be standing here having this very argument. We don't know, right? It could be the FDA, give the FDA time to implicate this complicated system to allow the public to know, because that wasn't the law before, when something was transmitted Eastern time, on a holiday, on a non-holiday, when it was transmitted from the FDA. That would give them time to implement it. We also know, though, that three other times where Congress, in the America Invents Act, expressly provided an effective date, so not the default, but in express provisions, the effective date is one year from enactment, yet it also expressly provides that it will apply retroactively. So we know that in this very statute, they did what I'm saying, by definition, how you should read Section 37. So for example, the provision that allows pre-issuance submissions by third parties with respect to patent applications, that doesn't take effect for a year. It expressly doesn't. It's 8B125 Statute 316. But when it does take effect, it applies to any patent application filed before, on, or after that effective date. So we know that Congress considered each of these things very carefully, or not. I guess it doesn't really matter. This court is just supposed to apply the statute as written and not try to figure out what it did. And we know that it knows how to make it effective immediately. We know that MEDCO knows how to try to get it to make effective immediately. This is just a retroactivity version. If you look at Landgraf, Martin v. Haddox, the cases they cite, those cases are not debates about when it takes effect. Civil Rights Act of 1991 expressly provided it takes effect immediately. In most situations, statutes do take effect immediately. So if Section 37, for example, were a standalone provision, it weren't part of this act, we wouldn't be having this debate. Because the default is when it doesn't provide, it takes effect immediately. But it's not. It's part of this act. And Section 35 provides that it doesn't take effect for a year. We're into your rebuttal time. Do you wish to save it or use it? Thank you very much, Judge Lurie. I would like to save it. Mr. Keisler has 15 minutes on medicines. And Mr. Himmelfab will take five for the government. Thank you, Your Honor, and may it please the court. I'd like to begin by addressing the issue of prudential standing. That was the subject of my friend's colloquy with Judge Bryson. And then, Judge Lurie, to turn to the questions about the merits of Congress's recent enactment. The injury that APP asserts here is the economic injury of being excluded from the market during the term of the medicine company's patent. And that's an Article III standing type standing inquiry, correct? Well, there's Article III in prudential standing. It would be an Article III injury if they had submitted factual evidence. Well, I know. But let's assume that they have satisfied Article III. You're going to move on to that. If they had submitted evidence that indicated they were ready and able to enter the market during the disputed patent term, then we move to the issue of prudential standing. And on that, the injury they assert is no different than the injury that any potential competitor could assert with respect to any grant of a patent term extension, or indeed any grant of a patent. But as Your Honor noted, the APA, and APP doesn't disagree with this, the APA doesn't permit third parties in that situation to take an appeal here. And the question in this case is whether the fortuitous route that APP took to get here makes a difference, whether Congress would actually have intended to foreclose APA review if there was direct appeal from a grant, but would have had some reason for permitting review in the strange situation that's presented here. APP hasn't suggested any rationale why Congress would have wanted that. And in fact, Congress adopted a different scheme, because it's not the case that APP doesn't have rights here. Of course they have rights. But Congress established that the way to assert those rights is in private infringement litigation under Section 271 and 282. They could have filed a Paragraph 4 certification. That would have provoked an infringement suit. And then Section 282 expressly permits them to offer as a defense a material failure by the director or by us to comply with Section 156D with respect to patent term extensions. Congress made specific provision for that in private infringement litigation. And the reason we're here is that APP does not want to follow that route. And they're very candid about why they don't want to follow that route. They don't like the procedures and the standards that Congress established for that route. They don't like the 30-month stay. They don't like the standard of review. And that's why they assert they should be entitled to bring this case here. They say that it's injury for them to be forced to hazard an infringement suit. But those hazards are just the standards and the procedures that Congress established expressly for challenging a patent term extension in this kind of instance here. Now, if I can interrupt on the prudential standing issue, your opposing counsel relies on Western Watersheds and a series of Ninth Circuit cases. A couple of cases, the Second Circuit Schultz case, I guess, have said similar things that I guess in the case of Western Watersheds saying that the intervener's standing need not be based on whether they would have had standing to independently bring this suit. Now, how do you address Western Watersheds and distinguish it from this situation? I think the difference is captured, Your Honor, by the very first question you asked my friend, because the situation in Western Watersheds was there were Bureau of Land Management regulations that pitted ranchers on one side and environmentalists on the other. And either could have presumably taken an APA, not appeal, but filed an APA action if they hadn't liked what the BLM had done. That's right. There's no question that either could have filed a petition for review. So when the government changed positions, the other side wasn't being permitted to do anything that Congress had indicated it should have been foreclosed from doing. But here we have a in which APP would have been permitted to appeal the grant of a patent term extension. And so it's APP's burden to show that Congress would have had some reason for distinguishing the situation here where they are effectively doing exactly the same thing from the situation where they've already conceded they wouldn't have any right to immediate judicial review. Now, we've been talking in terms of prudential standing, which has always struck me as a with. Is it fair to say that at least in this context, what we're really talking about is whether there's an APA cause of action, period, end of discussion? Yeah, I think that is correct, Your Honor. And in fact, this court in the Syntex case specifically said that the issue of prudential standing and zone of interest and the issue of reviewability merge in this context because essentially the question is, did Congress intend a party in this position to be able to bring an action through this procedure? Although, if we go all the way back to association data processing against camp, I guess it is that zone of interest was adopted in place of and instead of reviewability, which was the Brennan position. But I think since Justice Douglas, in a lot of ways, the Supreme Court has moved in other directions and in securities, Clark v. Securities Industry Association, it specifically just said, this is a question of congressional intent. You're looking at the scheme, you're looking at the purpose, you're trying to decide whether Congress intended this to be the vehicle for this kind of claim. And this party to have a right to go to a district court for review. That's correct. And this party does have a right to go to a district court, but they have to sue us or be sued by us. They can't sue the PTO. And that's effectively what they are doing here. And that's particularly clear now because this case has traveled a long distance from where it first began. Where it first began, and if you go back to APP's opening brief, their point was, we're just standing in the shoes of the PTO. This is not an adversarial action, us against the PTO. We are simply taking their place and defending their action. We don't think that was a viable theory then, but it's certainly not a viable theory now when they filed a stay application, the point of which is to try to prevent the PTO from doing what it would otherwise do, where they are challenging the PTO's view of the law and where they are claiming that an act of Congress is unconstitutional. Could you address real quickly the APP's contention that the district court abuses discretion in finding that the motion for intervention was untimely? Certainly, Your Honor. We do believe that the district court's ruling was correct, but I should say our principal arguments below on intervention were not on timeliness because we think it is so clear that under this court's decision in Chapman v. Manbeck, whatever the timeliness of that application, APP's interests are not impaired by denying an intervention and therefore it has no right to intervene. And they're not impaired, the court said in Chapman v. Manbeck, for the same reason they lack prudential standing, which is that they can pursue their rights as Congress meant them to under 282. You know, with respect to timeliness, Your Honor, we think the decision below was correct because we think APP should have known at the very beginning of this case that its interests and the government's had diverged because this is the second case that the medicines company brought. The first case that the medicines company brought, the issue there that the court resolved was the claim that APP raises here, which is the claim that the PTO was compelled by the statute. Had APMP intervened at that point in time or sought to intervene? No, it participated not at all in the first medicines company case. In the second case, it chose to... No, had it intervened or sought to have intervened, would that change the position on prudential standing? I don't think it would change the position on prudential standing because I think the court has treated those two issues as discreet. And the fact that a party is permitted to intervene at a time when the government is a defendant in the case doesn't establish that it would have the additional right to then come to this court and carry the case forward in the absence of the government. Because that's the point where the Supreme Court said in Diamond v. Charles, and this court has said in Boeing, that an additional burden is imposed. That's the burden of demonstrating both Article III standing and prudential standing. And if I may, I'd like to address Judge Lurie's questions about the constitutionality and applicability of Section 37. To take the constitutional issue first, Your Honor, since that's what you raised, the question that APP is presenting this to the court isn't presented by the facts of the case. The question that APP is presenting is, can Congress take some invention that's already in the public domain and take it away from the public domain and cloak it with patent protection? But as Your Honor noted, this invention has never been in the public domain. It's been covered by an unbroken series of extensions. During that period of time, the FDA was prohibited by statute from approving any other drug. So this is not a matter that was ever in the public domain. And what that means is that APP's theory here is something very different. It's a hypothetical public domain theory. Their theory, as my friend articulated it, is those extensions should not have been granted. They should have been declared invalid. And if they were, this matter would have been in the public domain. And therefore, this court should treat it for purposes of this constitutional argument as if it were in the public domain. But that theory is foreclosed by the Supreme Court's decision in McClurg v. Kingsland in 1843, because that was precisely the situation that the court was invalid under the law in effect at the time of the grant. And a few years later, Congress retroactively validated it. And that was the retroactive validation that the court approved in McClurg v. Kingsland. APP says there was never a constitutional holding. That's wrong. Supreme Court said specifically that the retroactive application is no reason to question the soundness of the validity of Congress's action, because the court said Congress's plenary. And so then I think we move to this issue of applicability. Congress has said that section 37 quote shall apply to any application or litigation that quote is pending on the date of enactment. Now APP acknowledged here that the provision applies to the medicine company's application, but says that nonetheless it somehow doesn't take effect for another year. So the Well, it is mandatory, and is pending means that it is referring to applications that are pending today. But when Congress uses the word shall, is it always a mandatory charge? Not invariably, Your Honor. Usually, and that's the general rule of construction, and somebody has to generally come forward with some evidence why it didn't mean that. But I am aware of instances in which it surprises me, but in which courts have held that shall can mean may. I'm aware of instances also. The civil rules have eradicated for years the use of the word shall, precisely because it had determined that shall was being construed as may in some instances. But I think the general presumption is that when Congress uses the word shall, it is imposing a mandatory duty, and that means that the court is expected to apply the existing law, the law that's created by the Why Congress would have intended a statute to apply to a matter that is pending today, but somehow not take effect for another year, nor does it explain how the PTO would actually implement such an incoherent scheme, and the language and the history of that provision absolutely foreclose it. As to the language, the language is very similar to the language of section 16b-4 of this act, which this court construed three weeks ago in the FLFMC case, non-precedential, that we provided to the court by letter yesterday. The court said it takes effect today, and it governed that appeal. The language is materially indistinguishable from the language the Supreme Court held out in Martin v. Haddix and Landgraf as the model for how, when Congress wants to write a clear statement that a matter applies today, how it should write it. This language is indistinguishable from that, and by using the words is pending, Congress made clear that it applies today, because if instead it had some inexplicable intent that this statute would take effect for a year and then reach back to matters that were pending as of the date of enactment, it would have said it shall apply to applications or to an application or litigation that was pending or that had been pending, but it said is pending, and APP literally makes no reply to this in its reply brief here. And finally, with respect to the history, APP says we're relying on isolated floor statements on the Hill. There is nothing isolated about it. You read that congressional debate from cover to cover, and people are talking about only one thing. The opponents of the statute and APP's own trade association are saying Congress shouldn't do this. It would be injecting Congress into pending litigation. That's wrong, and it shouldn't happen. And the supporters don't respond by saying, no, no, that's not what the statute would do. Supporters respond by saying we think it's appropriate to do that here. There's confusion. We want clarity, and this is an instance in which we should inject ourselves into pending litigation. There was no dispute about the effect of the statute. The only dispute was about the wisdom of the statute. Everybody agreed to that, to what the effect would be. Now, if the court has no further questions. Thank you, Mr. Tyson. If I could make, I'm sorry, Your Honor. Well, proceed. I still have a little time. I apologize. Just occurred to me there are two other points I would like to make on procedural matters. The first is that counsel for APP suggests that this case should be held for Golan. We don't see any reason for it to be held for Golan, not only because the applicability issue we think is so clear, but also because Golan presents an issue that's not implicated here. The works in Golan, which the Supreme Court is deciding whether Congress can extend copyright protection to, were indisputably in the public domain. The question there is whether works that were never subject to copyright protection can suddenly be granted that protection. There's no dispute that that's not an issue here. There's no dispute that there were interim extensions throughout the period and continuing to this day. The only other point I would like to mention is that APP has filed a stay application. We think that they haven't remotely shown a likelihood of success on the merits, just for the reasons I've articulated here. But in addition, we think they haven't remotely established their burden of showing irreparable harm, because their only claim of harm is that they believe there would be unspecified public confusion if a final extension order were issued, and that that confusion would somehow, they say, harm APP. We think this isn't remotely what needs to be shown to establish irreparable harm, and we would respectfully ask the Court to act on the stay motion however promptly it deems practical. I take it, again, with respect to prudential standing, that prudential standing is not a jurisdictional bar, and therefore there would be nothing inappropriate about our saying we are not going to address prudential standing initially, as we would have to presumably with Article 3, but instead to go to the merits. I think that's right, Your Honor, because prudential standing is ultimately a matter of construing congressional intent, and the merits are ultimately a matter. Yes, and the only other point I would make, if I could just make one final response to Judge Bryson to your question, and that is that even in the area of Article 3 standing, Steel Company says that even that can be jumped over when the merits are so insubstantial or frivolous or foreordained by prior precedent. For the reasons I've said, we actually believe that the applicability and constitutional issues presented here could meet even that standard, but that's obviously a judgment for the court, and even if the court agreed with that, it would just be discretionary which ground the court would begin with addressing it. I thought Steel Company was pretty bellicose about saying the rule of jurisdiction first. Is there language there? There is, Your Honor, because Justice Scalia distinguished without overruling some prior cases. But he distinguished them in calling them extraordinary in the sense that they were odd procedural ducks, one of which, as much as said, that was just a two-page per curiam. That's correct, Your Honor, and I don't deny that it would be a high standard to find that those terms that the Steel Company court used, insubstantial, frivolous, foreordained, would apply to any case. But in the event the court were sufficiently, were to agree with us on the merits and to believe that case were sufficiently strong, Steel Company would at least permit the court to do that. Thank you. Thank you, Mr. Keisler. Mr. Himmelfarb has five minutes on constitutionality. May it please the court, Edward Himmelfarb for the United States. I'm here to defend the constitutionality of Section 37, but maybe it would be more accurate to say I'm here to try to persuade the court not to reach that issue, and we gave four possible ways to avoid the issue in a brief, and I'd like to focus on the fourth of those, which is the extension issue, that this patent has been subject to uninterrupted interim extensions that continue through next August, and that it is never into the public domain, and therefore the constitutional argument doesn't really apply to this case because Section 37, no matter what you think it does, does not restore elapsed patent. And so that's the, in our way of looking at it, that's the simplest way of not reaching a constitutional issue. Do you think that would apply if an extension had been granted without even the pretense of statutory authorization, that PTO had simply said, we just want to keep this thing alive? Well, Your Honor, I think that somebody, some body, has to determine that the extension was inappropriate, that it's not authorized by law. Yeah, but your argument is, I take it, that as long as the extension was in place, if it is later determined to have been unauthorized, that is to say if the appellants win this case on the merits, that that doesn't change the fact that the subject matter was never in the public domain, right? That's right. Right. So my question is, assume then that the reason it was not in the public domain is not that there was an extension which is at least colorably authorized by statute, but instead was totally ultra-virus act on the part of the agency. That wouldn't be sufficient, I take it, to really keep it out of the public domain, right, in the sense that we're talking about here. Well, I don't think you can actually reach that until you have a... It may not be present in this case, but I'm really trying to see how far your argument goes with respect to the not in the public domain issue. Right, and I'm trying to understand, Your Honor, that how it would be known that this is totally ultra-virus unless some judicial body decided, looking back in it, it was ultra-virus. Well, and if it did, would that then mean that, in effect, we would then consider it to have, the subject matter, to have been in the public domain? I guess, looking back on it, if the court were to look back on an extension and determine that it was without legal authority, that would be a different question, sure. But then you have Section 37, which tells you you still have to do the same thing that PTO was ordered to do by the district court here. But that would change the nature of the constitutional inquiry, at least. If a court determined at some point that the extensions were unauthorized, perhaps, yes. And one of the interesting things is that, about the nature of the extensions here, is that it seems to me the APP's argument has sort of evolved over the course of this litigation. Now it's saying, in its supplemental briefing, it's saying that the patent actually actually lapsed, as I understand it, actually lapsed on March 23rd last year. But in its merits briefs, it took a slightly different position, the way I read it. It says that, in order to show that APP suffered some injury, it said, the district court's ruling compelling the PTO to extend the term of Medco's patent creates a barrier to APP's entry into the market. But for the appeal judgment, the 404 patent would have expired on March 23rd, 2010. And so I think we're really, I mean, if that's more in line with our view, that the district court's judgment is relevant to the fact that this patent has not expired yet. Because of the judgment, PTO issued two temporary, because of the pending litigation, PTO issued two temporary interim extensions until the district court actually decided the matter in August. And then at that point issued two additional interim extensions for a year. But those were actually based on different authorities. One, of course, was being ordered by the district court. And we see that as being authorized under 5 U.S.C. 705. And the second two, the third and fourth extensions being authorized under 35 U.S.C. 156E. So just to summarize, our position is that the fact that we have these continuous extensions means that you don't have to reach the constitutional issue. And in our brief, we did mention three other bases which the court could avoid the constitutional issue. But we don't, the one I've just mentioned, the extension issue is really the critical one here. The government does not take a position on intervention or standing. But if the court should decide that adversely to APP, then we don't have to, you don't have to reach the constitutional issue. The court could take a quick look and see if the district court's, whether the district court's decision under the original version of 156D seems to be correct. And if the district court's decision was correct under the original law, then nothing has changed now under Section 37. Or the court could agree with APP, contrary to our position, that Section 37 does not even apply at the moment. Thank you, Mr. Hammelfab. Your red light has been on. Thank you, Your Honor. See what else is in your briefs. Ms. Maynard, you can take five minutes. Thank you, Judge Lurie. I appreciate that. If I may, I'd like to make three points. First, with Judge Bryson and your questions about prudential standing, there is a cause of action here. It's an APA cause of action, and it's MEDCO's cause of action. What APP seeks to do is intervene as a defendant and step into the shoes of the government and defend the decision that it made administratively and the decision that the district court rejected. Our standing to do that is judged at the time we seek to intervene. So the fact that the Justice Department is now here, pursuant to its statutory authority to defend the constitutionality of statutes, does not change the fact that what we are trying to do is to defend the administrative decisions of the defendants below. We have standing to do that, and we don't believe that the prudential standing applies in that context. But even if it does, we think we need it for the reasons I said. How can you stand in the shoes of the government if the government is not a party to the appeal or has abandoned its case? Well, that was the case in the authority on which we rely. Western Wildlands, for example, the government agency had actually filed a notice of appeal and then during the penitentiary appeal dismissed the appeal and in fact then filed an amicus brief, which is different than the government's doing here, filed an amicus brief to oppose the standing of the would-be intervenors and the Ninth Circuit rejected that. So here the government is not taking a position. He's not opposing our standing or our motion to intervene. But I think it's true, is it not, that in each of the cases that you identified, at least each of the ones involving, some of them involve statutes, but at least the ones involving agency action, that either of the two private parties could have sought APA review of the initial decision of the agency if that had been adverse to them, including Western, what is it, Western Watershed. They have several cases with similar names. But here we have the somewhat anomalous situation in which, as you agree, one of the two parties could not have taken an appeal initially from a decision that is adverse to it in the sense that it would have preferred the other decision to have been issued by the PTO. But as you note, in those situations, like in Western Watersheds, and as Medco's brief admits, that the regulations would have come out, if they had issued regulations against them, they could have appealed. So they didn't have a cause. They're riding on the cause of action of the other party. They're defendants, and that's all we're doing. There's no doubt that Medco has a cause of action here, and we're seeking to intervene to protect our Article 3 interests. And the Supreme Court case law doesn't suggest prudential standing applies in that context. Western Watersheds doesn't, and we don't think it does when you're stepping in. But I think we fall well within the zone of interest of the Hatch-Waxman Act in any event. And Judge Rania, in terms of your question about APP, should it have known to intervene earlier? No, Your Honor. Throughout the litigation, through the first case and the second case, the defendants below, the PTO, the FDA, they were strongly defending the administrative decision of the PTO. And it was only once they decided not to appeal, for whatever reason, that APP knew that it was no longer protected. And within a week of learning that, APP moved to intervene. Now, you have a pending ANDA. It's possible that might not be proved, in which case your argument here about being within the zone of interest and potential injury falls by the wayside. It's speculative. Our interest doesn't have to be, our injury doesn't have to be but for, in order to have Article III injury, Judge Lurie. And the Supreme Court case law makes that clear. I think Clinton, which is a case that we cite in our briefs, and Bryant, they all say that as long as there's a barrier to it set up in your path, that this would remove. They're not necessarily home free, is what you're saying. I take it if you win this case, but you're a lot closer to home than you're on third base as opposed to first base. There's no doubt that a barrier that stands between us and approval of the generic drug that we have already prepared would be removed if the court were to rule in our favor. But going back to Judge Lurie's question, how do you know, how do we, how do we know that the application is going to be approved? Isn't it speculation to say that you you do have an interest? It's not speculative in the sense that would take away our interest. Medco doesn't dispute that we have filed an ANDA. Is there something in the record from the FDA that says if you provide this added piece of information, your application will be approved? No, Your Honor, but I don't think we need that because no one disputes that the existence of the patent is a bar to our ANDA being approved. And if the court were to remove that barrier, that would be, put us one step closer. So there's, I think that's enough. Well, it's a barrier only with respect to a particular time frame. Ultimately, whether your ANDA is going to be approved depends upon the quality and quantity of information that you provide to the FDA. There's no doubt this, this alone will not get us home, but that's not the test. And if I may just address the government's, the Justice Department's arguments for a moment. Briefly. Thank you, Your Honor. I think that my friend from the Justice Department essentially conceded what is our argument, which is that the, this court should decide that under the unamended statute, their, their request for a patent term extension was untimely. And as a matter of law, the patent was invalid when Congress acted here. And that would make a constitutional difference. I also it's notable he doesn't try to defend that it, that the merits of that point here today. And this is not McClurg in response to Mr. Keisler's point. McClurg was not a case in which a patent had run, it's an entire time, expired, and then Congress attempted to revive it. Thank you very much, Your Honor. Thank you, Ms. Maynard. We'll take the case under advisement. All rise. The honorable court is adjourned from date today.